IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| LEONARD MARSH & LUN YE MARSH, | ) | |
| | ) | |
| Debtors. | ) | |
| _____ | ) | No. 13 C 666 |
| | ) | |
| LEONARD MARSH & LUN YE MARSH, | ) | |
| | ) | |
| Appellants, | ) | Appeal from: |
| | ) | U.S.B.C. No. 10-45569 |
| v. | ) | Adversary No. 11-227 |
| | ) | |
| UNITED STATES DEPARTMENT OF | ) | |
| HOUSING & URBAN DEVELOPMENT, | ) | |
| | ) | |
| Appellee. | ) | |

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, Chief Judge:

On December 15, 2011, the bankruptcy court entered judgment in an adversary proceeding denying the attempt of debtors Leonard Marsh and LunYe Marsh under 11 U.S.C. § 506(d) to "strip off" a junior lien on their residence held by the United States Department of Housing and Urban Development ("HUD"). The bankruptcy court's judgment was based on its determination that the Marshes' residence should be valued as of the date of bankruptcy plan confirmation. On July 19, 2012, this court reversed, holding that valuing the Marshes' residence as of the date of bankruptcy plan confirmation was incorrect in the circumstances of this case. *Marsh v. U.S. Dep't of Hous. & Urban Dev. (In re Marsh)*, 475 B.R. 892 (N.D. Ill. 2012). The court remanded, requesting the bankruptcy court to determine in the first instance whether valuation should occur as of the date of the filing of the bankruptcy petition or as of the date of the judgment resolving the

adversary proceeding. *Id.* at 897-98.

On January 4, 2013, the bankruptcy court entered judgment in favor of HUD, holding that valuation should occur as of the date of the judgment in the adversary proceeding. The Marshes appealed that determination, contending that valuation should occur as of the date of the bankruptcy petition. For the reasons explained below, the judgment of the bankruptcy court is reversed, and the case is remanded with instructions that the bankruptcy court determine the value of the Marshes' residence as of the date of the filing of the bankruptcy petition.

BACKGROUND

The Marshes, who are husband and wife, filed for bankruptcy protection under Chapter 13 of the United States Bankruptcy Code on October 12, 2010. (Bankr. Dkt. No. 1.[1]) Their petition listed total assets of $94,925, including their home at 7701 S. Paxton Ave. in Chicago valued at $90,000. (*Id.* at 6, 8.) They also listed total liabilities of $158,294, including a senior mortgage on their home in the amount of $113,438 and a junior mortgage owned by HUD in the amount of $29,312. (*Id.* at 6, 14.) On December 15, 2010, the Marshes filed a modified Chapter 13 bankruptcy plan which would allow them to retain their home. (Bankr. Dkt. No. 26, at 5.) The modified plan proposed "stripping off" HUD's junior mortgage by treating it as an unsecured claim under 11 U.S.C. § 506. (*Id.*) The modified plan has not yet been confirmed by the bankruptcy court, and a confirmation hearing is scheduled for June 3, 2013. (Bankr. Dkt. No. 69.)

On January 20, 2011, the Marshes filed an adversary complaint under Bankruptcy Rule 7001(2), which allows an adversary proceeding "to determine the validity, priority, or extent of a

---

[1] In this opinion, this court will refer to documents in the docket of the Marshes' general bankruptcy proceeding (No. 10-bk-45569) as follows: (Bankr. Dkt. No. __.). This court will refer to documents in the docket of the adversary proceeding between the Marshes and HUD (No. 11-ap-227) as follows: (Adv. Dkt. No. __.).

lien." (Adv. Dkt. No. 1.) The adversary complaint alleged that the fair market value of the Marshes' home at the time of the bankruptcy petition was $90,000, and that the home was thus inadequate to secure the senior mortgage. (*Id.* ¶¶ 7, 8.) According to the Marshes, HUD's junior mortgage was thus entirely unsecured, and should be void under 11 U.S.C. § 506(d). (*Id.* ¶ 11.)

At trial, the Marshes presented evidence that the value of their home was $90,000 as of the petition date, October 12, 2010. (Adv. Dkt. No. 15, at 3.) The court held, however, that the value of the property must be determined "as of the effective date of the plan as required by 11 U.S.C. § 1325(a)(5)(B)(ii)." (Adv. Dkt. No. 21.) Because the Marshes had presented no evidence with respect to the value of the property at that date, the bankruptcy court held that they had not met their burden of establishing that the value of the property was insufficient to secure HUD's junior mortgage. (*Id.*) The bankruptcy court thus entered judgment in favor of HUD. (Adv. Dkt. No. 22.) On February 25, 2012, the bankruptcy court denied the Marshes' motion to alter or amend the judgment (Adv. Dkt. No. 29), and the Marshes then appealed. (Adv. Dkt. No. 30.)

This court reversed the bankruptcy court holding that it was improper in these circumstances to value the Marshes' residence as of the effective date of the plan. Specifically, the court held that it was impossible for the bankruptcy court to determine at the conclusion of the adversary proceeding the value of the Marshes' residence at plan confirmation, which at that point was still in the future. *Marsh*, 475 B.R. at 896-97. Because "[p]lan confirmation will not always swiftly follow the resolution of an adversary proceeding . . .[,] a bankruptcy court will be unable to provide a proper value of collateral as of the date of plan confirmation when the purpose of the valuation is the resolution of an adversary proceeding." *Id.* at 897. This court noted that valuation could occur at two other possible times: the date of judgment in the adversary proceeding and the

3

date of filing of the bankruptcy petition. *Id.* at 897-98. Because the parties had not briefed the question considering those two possibilities, this court remanded the case to the bankruptcy court to determine the proper date of valuation in the first instance. *Id.* On January 4, 2013, the bankruptcy court entered judgment in favor of HUD, holding that valuation should occur as of the date of the judgment in the adversary proceeding. (Adv. Dkt. No. 47.) The Marshes timely appealed. (Adv. Dkt. No. 48.) After considering the matter fully and for the reasons stated below, this court holds that the proper date of valuation in these circumstances is the date of the filing of the bankruptcy petition.

## ANALYSIS

A federal district court reviews a bankruptcy court's factual findings for clear error, and reviews the bankruptcy court's legal conclusions de novo. *Bielecki v. Nettleton*, 183 B.R. 143, 145 (N.D. Ill. 1995). The only issue here is purely legal: as of what time should the bankruptcy court value the Marshes' residence under 11 U.S.C. § 506? HUD defends the bankruptcy court's holding that the valuation should occur as of the date of the judgment in the adversary proceeding, while the Marshes contend that the valuation should occur as of the filing of the bankruptcy petition.

> Section 506(a) provides that:
>
> An allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property . . ., and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

After the bifurcation of a claim into secured and unsecured portions under § 506(a), the debtor may "strip off," or void, any junior lien on property that is entirely unsecured by the value of the

property. *See* 11 U.S.C. § 506(d) ("[T]o the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void."); *Marsh*, 475 B.R. at 894-95 nn.2-3.

As the court explained in the Marshes' first appeal, the Supreme Court has established that the proper procedure for valuing the debtor's collateral under § 506(a) depends on both the proposed disposition or use of the property, and of the purpose of the valuation.[2] *Id.* at 895 (citing *Assocs. Commercial Corp. v. Rash*, 520 U.S. 953 (1997)). In accordance with the Supreme Court's instruction, the bankruptcy court determined that the purpose of the valuation here "is to determine what a secured creditor will receive going forward." (Adv. Dkt. No. 47, at 3.) The bankruptcy court then reasoned that "[t]he date that the court resolves the adversary proceeding is best" for valuation "because the issue being resolved does not focus on circumstances at filing, as do the issues of adequate protection and whether property will be claimed as exempt." (Adv. Dkt. No. 47, at 3.)

This court finds that rationale unpersuasive. The "issue being resolved," as stated by the bankruptcy court, is the determination of whether a junior creditor's lien should be stripped off under § 506(d) because it is wholly unsecured. That determination requires the court to ascertain both the value of the collateral and the value of the senior creditor's secured claim, because a strip-off of a junior lien is appropriate only when the value of the collateral is less than the value of the senior claim. And as the Marshes point out, the value of the senior creditor's allowed secured claim is determined as of the date of the filing of the petition. *See* 11 U.S.C. § 502(b) ("[T]he court,

---

[2] The proposed disposition or use of the property does not provide any particular guidance about the time as of which the collateral should be valued in this case, for the Marshes' retention of the property for use as a residence is consistent with valuation at any point during the bankruptcy proceedings. *Marsh*, 475 B.R. at 896. The court's analysis thus focuses on the purpose of the valuation.

5

after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition."). To some degree, therefore, the issue being resolved *does* focus on the circumstances at filing. Moreover, the existence of § 502(b) shows the error in reasoning that a later valuation is appropriate merely because the valuation will be used to determine affairs "going forward," for it provides an example of the bankruptcy code requiring courts to determine the post-discharge rights of the parties based in part on the circumstances at filing.[3]

The court is also not persuaded by the bankruptcy court's use of the canon of construction *expressio unius est exclusio alterius.* Congress amended § 506(a) in 2005 to add § 506(a)(2), which provides that in a chapter 7 or 13 case, a debtor's personal property should be valued "as of the date of the filing of the petition." The bankruptcy court reasoned that the specification of the date of filing for valuing personal property creates the negative implication that Congress did not intend real property to be valued as of that date. (Adv. Dkt. No. 47, at 3.)

But there is a more plausible explanation. Section 506(a)(1) provides that the value of property should be determined "in light of the purpose of the valuation and of the proposed disposition or use of such property," thus contemplating that the time of valuation will vary in

---

[3] Section 506(b), of course, allows a senior secured creditor to increase its claim after the petition date by adding interest and fees that are covered by the value of the collateral. In general, however, the augmentation of the senior secured claim will not decrease the amount of the junior secured claim as determined as of the petition date, because "the junior creditor may be entitled to adequate protection of its interest in the collateral" under 11 U.S.C. § 361(1). 4 *Collier on Bankruptcy* 506.04[5] (16th ed. rev. 2012); *see also In re Rupprect*, 161 B.R. 48, 49 (Bankr. D. Neb. 1993) (holding that junior creditor entitled to adequate protection from interest accruing on senior claim). Conversely, principal payments to the senior creditor by the debtor after the petition date do not increase the value of the junior creditor's claim. *See Pitre v. First Nat'l Sav. & Loan Ass'n of Chi. (In re Pitre)*, 11 B.R. 777, 781 (Bankr. N.D. Ill. 1981). The value of the senior claim is therefore usually fixed as of the petition date for purposes of determining the secured status of the junior claim.

different circumstances.[4] Section 506(a)(2) then provides an exception to that rule, stating a standard time for valuation of personal property in chapter 7 and chapter 13 cases. The exception does not exclude the possibility that valuation at the petition date might also be appropriate in other circumstances under the flexible approach of § 506(a)(1). The *expressio unius* canon thus does not resolve the question before the court.

The Marshes present their own general principle for resolving this case: that debtors, rather than secured creditors, generally are "entitled to post petition appreciation of their residences." (Dkt. No. 5, at 11.) According to the Marshes, the court should therefore strip off HUD's junior lien based on the residence's value at the petition date, leaving the Marshes, rather than HUD, to enjoy any appreciation in the value of the residence thereafter. The Marshes contend that allowing HUD the benefits of the appreciation in violation of this principle would be an inappropriate "windfall." (*Id.* at 10.)

But the Marshes provide no compelling support for the principle that debtors are entitled to appreciation of their assets after the petition date.[5] Moreover, they ignore the Supreme Court's comments in *Dewsnup v. Timm*, 502 U.S. 410, 416-17 (1992). In *Dewsnup*, the Supreme Court rejected the petitioner's argument that § 506(a) allows a debtor to strip off the lien of a junior

---

[4] Section 506(a) also provides that the value shall be determined "in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest." That provision addresses the stage of the proceedings at which the bankruptcy court should determine the value of the property, however, not the time as of which the property should be valued.

[5] The Marshes chiefly rely on Congress's additions of § 522(f)(2)A) and § 506(a)(2) to the bankruptcy code in 1994 and 2005, respectively. Both of those provisions provide that the debtor is entitled to post-petition appreciation of the debtor's property in limited circumstances. There are no grounds to infer from those limited provisions that Congress intended to establish a general principle that the bankruptcy code allows debtors to enjoy the value of any post-petition appreciation in their assets in all circumstances that might arise.

creditor in Chapter 7 proceedings. The court commented that:

> The practical effect of petitioner's argument [for allowing lien stripping] is to freeze the creditor's secured interest at the judicially determined valuation. By this approach, the creditor would lose the benefit of any increase in the value of the property by the time of the foreclosure sale. The increase would accrue to the benefit of the debtor, a result some of the parties describe as a "windfall."
>
> We think, however, that the creditor's lien stays with the real property until the foreclosure. That is what was bargained for by the mortgagor and the mortgagee. The voidness language sensibly applies only to the security aspect of the lien and then only to the real deficiency in the security. *Any increase over the judicially determined valuation during bankruptcy rightly accrues to the benefit of the creditor*, not to the benefit of the debtor and not to the benefit of other unsecured creditors whose claims have been allowed and who had nothing to do with the mortgagor-mortgagee bargain.

*Id.* at 417 (emphasis added). The Supreme Court's statement that post-petition appreciation "rightly" accrues to the creditor eviscerates the Marshes' theory that the debtor enjoys the benefit of any post-petition appreciation as a matter of principle.

Although the Supreme Court's opinion in *Dewsnup* does not establish a general principle for allocating post-petition appreciation, it does provide guidance for resolving the issue in this case. Specifically, the Supreme Court in *Dewsnup* focused on preserving, to the extent possible in bankruptcy, the terms of the "mortgagor-mortgagee bargain." *Id.* That focus reflects the policy in the bankruptcy code of preserving, to the extent possible, the contractual benefits due secured creditors. *See id.* ("We think, however, that the creditor's lien stays with the real property until the foreclosure. That is what was bargained for by the mortgagor and the mortgagee."). That principle runs throughout the bankruptcy code. *See* 4 *Collier on Bankruptcy* ¶ 506.03[6][a][i] (16th ed. rev. 2012) ("[T]he Code adopts a general 'equivalent value' approach in the sense of requiring the preservation and protection of the value (if not the substance) of the rights bargained for by the secured creditor."); *cf.* H.R. Rep. No. 95-595, at 338-40 (1977) ("Secured creditors should not be

8

deprived of the benefit of their bargain. . . . Though the creditor might not receive his bargain in kind, the purpose of the [adequate protection concept] is to insure that the secured creditor receives in value essentially what he bargained for."). To determine the appropriate time as of which to value the Marshes' residence, therefore, the court must first consider HUD's rights outside of bankruptcy.[6]

Under non-bankruptcy law, a mortgagee generally bargains for the right to foreclose on the mortgaged property of a defaulted debtor, thereby forcing the valuation of the property through a foreclosure sale. Significantly, through the foreclosure mechanism, the creditor gets to choose, at least roughly, when the valuation occurs. If the creditor believes that the value it can recover from the property may increase in the future, it retains the option of delaying the foreclosure to attempt to capture that increase. *See id.* ("As part of its bargain, the secured creditor typically has the option upon the debtor's default either to (i) cash out its position through collection or a foreclosure disposition of the collateral, or (ii) forbear from taking any action if it would be to the secured creditor's advantage to permit the debtor to use or sell the collateral.").

Superficially, the right of a secured creditor to choose the date of the valuation under non-bankruptcy law suggests that using the petition date for valuation of the Marshes' residence here is improper. The debtor, after all, chooses when to file the petition, and there is nothing to prevent the debtor from opportunistically selecting a filing date when the value of its property is at

---

[6] The court notes that although the principle articulated in *Dewsnup* is applicable broadly, its particular holding does not resolve the issue here. Specifically, the Supreme Court's conclusion in *Dewsnup* is limited to a chapter 7 liquidation, in which a foreclosure sale will dispose of the collateral. In a reorganization under chapter 13 in which the debtor proposes to retain the collateral, no foreclosure sale will occur, and the court must artificially value the collateral without the benefit of a foreclosure sale to fix the collateral's value. The holding in *Dewsnup* thus does not directly resolve the issue before this court.

a minimum. By contrast, the debtor has less opportunity to fix the date of judgment in an adversary proceeding, which can vary significantly depending on the court's docket and the litigation actions of the creditor.

But it is important to note that a junior lienor does not fully enjoy the flexibility to determine a foreclosure date, for a senior lienor often forces the issue by bringing a foreclosure action and joining the junior lienor. *See* 735 ILCS 5/15-1501(b) (permitting any party to join other holders of secured interests in a foreclosure action). In that case, the value of the collateral will be fixed and the junior lienor's rights determined as of the date of the foreclosure sale, regardless of the desire of the junior lienor to value the collateral at another time. *See* 735 ILCS 5/15-1506(i). As a practical matter, therefore, using the petition date to value the collateral deprives the junior lienor of no significant non-bankruptcy right.

Moreover, the use of the petition date rather than the date of judgment in an adversary proceeding is more appropriate given the allocation of risk to the parties in the non-bankruptcy context. Outside of bankruptcy, and prior to any foreclosure, the secured creditor bears the risk of depreciation of the collateral, and also gains the benefit of any appreciation (up to the value of its secured interest). Insofar as the secured creditor has contracted for an interest in the collateral, therefore, the secured creditor enjoys the benefits of appreciation and the risks of depreciation of that collateral.

In the bankruptcy context, however, the downside risk of the secured creditor is frozen as of the petition date through the mechanism of adequate protection. *See* 11 U.S.C. § 362(d)(1). Under that mechanism, a secured creditor may request payment, a replacement lien, or other relief to ensure that the overall value of the secured creditor's claim does not decline during the

bankruptcy proceeding. That rule ensures that a junior lien will not be stripped off if the collateral has adequate value to secure at least part of the lien as of the petition date, regardless of whether the value of the collateral subsequently declines. In other words, the junior lienor's risk of collateral depreciation is eliminated in the bankruptcy context as of the petition date.

The allocation of the benefit of any post-petition appreciation, by contrast, depends on the valuation date. If valuation occurs as of the petition date, the junior lienor gets no benefit of subsequent appreciation. But if valuation occurs at the date of the judgment in the adversary proceeding, the junior lienor enjoys the benefit of any appreciation between the petition and the adversary proceeding. The question presented in this case therefore boils down to whether the junior lienor should enjoy the benefit of post-petition appreciation of the collateral when it no longer bears the risk of post-petition depreciation during that period.

Based on the allocation of risk in non-bankruptcy law, the answer must be "no." Under non-bankruptcy law, a secured creditor enjoys upside risk only when the creditor also bears downside risk. The right to enjoy upside risk without any offsetting downside risk is a benefit for which the secured creditor has not bargained. To grant a secured creditor that right would constitute a windfall, as compared to non-bankruptcy law. Accordingly, the court determines that the proper time to value collateral for the purpose of stripping off a junior lien as part of an adversary proceeding is the petition date.

HUD's only remaining argument to the contrary is that using the petition date will violate § 506(a)(1)'s requirement that the method of valuation be flexible, insofar as a variety of other purposes, including the calculation of adequate protection and the assertion of exemptions, also require valuation as of the petition date. (Dkt. No. 7, at 9.) HUD's contention is unfounded,

however, as there remain other contexts in which the petition date is not the appropriate date for valuing collateral. The most obvious example is any situation under the bankruptcy code requiring an actual foreclosure sale (as in *Dewsnup*), in which case the value is fixed as of the time of the sale. The court does not doubt that other circumstances may arise in which valuation of collateral as of the petition date is improper. In the circumstances presented here, however, valuation as of the petition date is appropriate.

## CONCLUSION

For the reasons explained above, the judgment of the bankruptcy court is reversed and the case is remanded with instructions that the bankruptcy court determine the value of the Marshes' residence as of the date of the filing of the bankruptcy petition. Terminate Civil Case.

ENTER:

_____
JAMES F. HOLDERMAN
Chief Judge, United States District Court

Date: March 13, 2013